**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**American Family Prepaid Legal Corp.**,

      Plaintiff,

vs.                                  Case No. 05-CV-459
                                        Judge Gregory L. Frost
**Columbus Bar Association,**          Magistrate Judge Kemp

      Defendant.

## OPINION & ORDER

Currently fully briefed and ripe for review is a Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by Defendant Columbus Bar Association ("CBA") . (Doc. # 44). Upon due consideration of the motion, memorandum in opposition, and the reply, the Court finds the motion to be well taken.

## BACKGROUND

**I.      Parties**

Plaintiff American Family Prepaid Legal Corporation ("American") is a California corporation that sells memberships in a prepaid legal services plan ("plan"). (Doc. # 1 ¶ ¶ 1, 6). The CBA is an Ohio corporation charged with enforcement authority for the rules promulgated by the Supreme Court of Ohio regarding the regulation of the authorized and unauthorized practice of law in Ohio. *Id.* at ¶ 2.

**II.     The Plan**

A brief description of how the plan works is necessary to understand the procedural posture of this case. American solicits prospective members of the plan through the mail or via

1

telephone.  *Id.* at ¶ 23.  Once an individual has expressed interest in joining the plan, the plan

sets up a meeting between that individual and a plan representative.  *Id.* at ¶ ¶ 26, 28.  The plan

representative reviews the features of the plan with the prospective member, which primarily

include estate planning services.  *Id.* at ¶ 9.  The plan costs $ 1,995.[1]  *Id.*  Should an individual

become a member of the plan, plan employees collect information from plan participants and

attorneys licensed to practice law in the state of Ohio prepare legal estate planning documents.

*Id.* at ¶ 6, 8, 10, 28-38.

### III.    November 19, 2002 Complaint with the Unauthorized Practice of Law Board

The CBA filed a formal complaint with the Ohio Supreme Court's Board of

Commissioners on the Unauthorized Practice of Law ("UPL Board") on November 19, 2002.  *Id.*

at ¶ 60; *see also* Doc. # 44 Ex. 2; Case No. 02-10 before the UPL Board.[2]  As the name of the

Board indicates, the CBA alleged that American was engaging in the unauthorized practice of

law.  *Id.* at ¶ 60.

Several months later, on March 25, 2003, American and the CBA entered into a Consent

Agreement ("Consent Agreement") whereby American agreed to refrain from certain conduct.

*Id.* at ¶ 62.  Namely, American agreed to stop (1) selling, marketing, and/or preparing wills,

living wills, living trusts, durable powers of attorney, deed transfers, and agreements for transfer

or assignment of personal property; (2) training, monitoring, and educating other sales

---

[1] In addition, members may retain a plan lawyer for additional services at a twenty-five (25) percent discount.  *Id.* at 58.

[2] The court may take judicial notice of public records, including those present on the Supreme Court of Ohio's Docket, without converting this motion to dismiss to a motion for summary judgment.  *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999); *see also* Gov. Bar R. VII § § 15, 19.

representatives to sell, market, or prepare said legal documents; (3) engaging the services of an

Ohio attorney for a mere cursory review of those legal documents; and (4) giving legal advice

relative to said legal products.  *Id.*

      Moreover, the Consent Agreement provided:

> Failure to perform or otherwise abide by any term of this Consent Agreement by
> any party named herein shall be considered a material breach of the agreement
> upon which the aggrieved party may pursue all underlying claims by re-opening
> the present case and/or initiating a new cause of action in a court of competent
> jurisdiction.  Furthermore, all partes stipulate that this Consent Agreement is
> admissible in any subsequent court proceeding in the event that further allegations
> of the unauthorized practice of law by [American] are brought to [the CBA's]
> attention.

(Doc. # 44 Ex. 2).  The CBA's complaint was dismissed on May 6, 2003, and American Family

altered its business practice to avoid future appearances before the UPL Board.  (Doc. # 1 ¶ ¶ 66,

68).

## IV.    Motion to Enforce Consent Agreement

      Several months after the executing the Consent Agreement, the parties found themselves

back before the UPL Board.  Specifically, the CBA had exercised its right under the Consent

Agreement to re-open the matter by filing a motion to enforce that agreement with the UPL

Board.  *Id.* at ¶ 69.  On December 30, 2004, after the parties had fully briefed the matter,  the

UPL Board issued an order denying the CBA's motion. *Id.* at ¶ 72; Ex. C.[3]

---

    [3]  "As a general rule, matters outside the pleadings may not be considered in ruling on a
12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under
Fed. R. Civ. P. 56." *Jackson*, 194 F.3d at 745 (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th
Cir. 1997)). There are, however, exceptions to this general rule.  *Id.*  Documents attached to a
motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's
complaint and are central to the plaintiff's claim.  *Id.*  The Board's order is attached to
American's Complaint as Ex. C. (Doc. # 1).

**V.    Motion for a Cease and Desist Order**

The CBA utilized Rule for the Government of the Bar VII Section 5a ("Rule") to file a

motion for a cease and desist order with the Supreme Court of Ohio on March 3, 2005.  (Doc. # 1

¶ ¶ 73, 89; Doc. # 44 Ex. 7).  That section of the rule, entitled Interim Cease and Desist Order,

provides:

> (A)(1) Upon receipt of substantial, credible evidence demonstrating that an individual or
> entity has engaged in the unauthorized practice of law and poses a substantial threat of
> serious harm to the public, the Disciplinary Counsel or unauthorized practice of law
> committee of any regularly organized bar association, which shall be referred to as the
> relator, shall do both of the following:
>
>> (a) Prior to filing a motion for an interim cease and desist order, make a
>> reasonable attempt to provide the individual or entity, who shall be referred to as
>> respondent, with notice, which may include notice by telephone, that a motion
>> requesting an interim order that the respondent cease and desist engaging in the
>> unauthorized practice of law will be filed with the Supreme Court.
>> (b) File a motion with the Supreme Court requesting that the Court order
>> respondent to immediately cease and desist engaging in the unauthorized practice
>> of law. The relator shall include, in its motion, proposed findings of fact,
>> proposed conclusions of law, and other information in support of the requested
>> order. Evidence relevant to the requested order shall be attached to or filed with
>> the motion. The motion may include a request for an immediate, interim cease
>> and desist order pursuant to Rule XIV of the Rules of Practice of the Supreme
>> Court of Ohio. The motion shall include a certificate detailing the attempts made
>> by relator to provide advance notice to the respondent of relator's intent to file the
>> motion. The motion also shall include a certificate of service on the respondent at
>> the most recent address of the respondent known to the relator.
> (2) After the filing of a motion for an interim cease and desist order the respondent may
> file a memorandum opposing the motion in accordance with Rule XIV of the Rules of
> Practice of the Supreme Court of Ohio. The respondent shall attach or file with the
> memorandum any rebuttal evidence.
>
> (B) Upon consideration of the motion and any memorandum opposing the motion the
> Supreme Court may enter an order that the respondent cease and desist engaging in the
> unauthorized practice of law, pending final disposition of proceedings before the Board

---

4

predicated on the conduct threatening the serious harm or may order other action as the Court considers appropriate. If requested by relator, the Supreme Court may enter an order that the respondent immediately cease and desist engaging in the unauthorized practice of law prior to receipt of a memorandum opposing the relator's motion, pursuant to Rule XIV of the Rules of Practice of the Supreme Court of Ohio.

(C)(1) The respondent may request dissolution or modification of the cease and desist order by filing a motion with the Supreme Court. The motion shall be filed within thirty days of entry of the cease and desist order, unless the respondent first obtains leave of the Supreme Court to file a motion beyond that time. The motion shall include a statement and all available evidence as to why the respondent no longer poses a substantial threat of serious harm to the public. A copy of the motion shall be served by the respondent on the relator. The relator shall have ten days from the date the motion is filed to file a response to the motion. The Supreme Court promptly shall review the motion after a response has been filed or after the time for filing a response has passed.
(2) In addition to the motion allowed by division (C)(1) of this section, the respondent may file a motion requesting dissolution of the interim cease and desist order, alleging that one hundred eighty days have elapsed since the entry of the order and the relator has failed to file with the Board a formal complaint predicated on the conduct that was the basis of the order. A copy of the motion shall be served by the respondent on the relator. The relator shall have ten days from the date the motion is filed to file a response to the motion. The Supreme Court promptly shall review the motion after a response has been filed or after the time for filing a response has passed.

(D) The Rules of Practice of the Supreme Court of Ohio shall apply to interim cease and desist proceedings filed pursuant to this section.

(E) Upon the entry of an interim cease and desist order or an entry of dissolution or modification of such order, the Clerk of the Supreme Court of Ohio shall mail certified copies of the order as provided in Section 19(E) of this Rule.

In accordance with the Rule, American filed its memorandum in opposition on March 14, 2005.

(Doc. # 1 ¶ 92; Doc. # 44 Ex. 9).

Less than one month later, on April 12, 2005, the Ohio Supreme Court issued an Order

stating:

On March 3, 2005, realtor [party asserting individual or entity is engaged in the unauthorized practice of law], Columbus Bar Association, filed a Motion for Interim Cease and Desist Order and a Motion to Enforce Settlement Agreement with Hearing Requested.  On March 14, 2005, respondents, American Family Prepaid Legal Corporation, *et al.*, filed memos opposing the motions.  Upon consideration thereof,

> **IT IS ORDERED** that the Motion for Interim Cease and Desist Order be, and hereby is, granted.  It is further ordered, pursuant to Gov. Bar. R. VII(5a)(B), that respondents are to immediately cease and desist engaging in the unauthorized practice of law.  It is furthered [sic] ordered that the Board on the Unauthorized Practice of Law is directed to hold a hearing to consider whether the March 2003 settlement agreement has been violated and to file a report with the Court.

(Doc. # 1 ¶ ¶ 93-94; Doc. # 44 Ex. 10)).  The Order was signed by Chief Justice Thomas Moyer.  Subsequently, American filed a motion for clarification of the order but the Supreme Court of Ohio denied that motion on May 20, 2005.  (Doc. # 1 ¶ 97); *see also* http://www.supremecourt ofohio.gov/clerk_of_court/ecms/resultsbycasenumber.asp?type=3&year=2005&number=0422& myPage=searchbycasenumber%2Easp (viewed on May 4, 2006).

## VI.    The Current Action

American instituted this case on May 11, 2005, alleging that the Rule facially violates American's right to procedural due process in violation of the Fourteenth Amendment to the Constitution and 42 U.S.C. § 1983 because the Rule does not provide for a pre-deprivation or post-deprivation hearing.  (Doc. # 1 ¶ ¶ 108-119; Doc. # 42).  In addition, American asserts a claim for a declaration that the Rule is facially unconstitutional due to its alleged procedural defects.  For relief, American requests, *inter alia*, an injunction precluding the CBA from enforcing the Cease and Desist Order.  (Doc. # 1 ¶ ¶ 120-127).

The CBA moves to dismiss both of American's claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In support of its motion, the CBA contends that the *Rooker-Feldman* doctrine, the Eleventh Amendment, and the *Younger* abstention doctrine deprive the Court of jurisdiction over the matter.  (Doc. # 44).  Alternatively, the CBA argues that American fails to state claims upon which relief can be granted.  *Id.*  The Court shall briefly discuss the standard of

review involved before turning to an examination of the motion.

## STANDARD OF REVIEW

The CBA contends first that dismissal is warranted under Fed. R. Civ. P. 12(b)(1), which enables a defendant to raise by motion the defense of "lack of jurisdiction over the subject matter."  In considering such a motion

> the court may consider evidence outside the pleadings to resolve factual disputes concerning jurisdiction, and both parties are free to supplement the record by affidavits. However, where a defendant argues that the plaintiff has not alleged sufficient facts in her complaint to create subject matter jurisdiction, the trial court takes the allegations in the complaint as true.

*Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003) (citations omitted).  A plaintiff bears the burden of proving jurisdiction.  *Id.*; *Moir v. Greater Cleveland Reg'l Transit Auth.,* 895 F.2d 266, 269 (6th Cir. 1990).

Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Ohio Nat'l Life v. Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).  A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading.  *Id*.  In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss. *Id.* On the other hand, when a court reviews a complaint under a factual attack, no presumptive truthfulness applies to the factual allegations. *Id.*  Such a factual attack on subject matter jurisdiction commonly has been referred to as a "speaking motion." *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 1364, at 662-64 (West 1969).  When facts presented to the district court give rise to a factual controversy, the district court must therefore weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or

does not exist. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996). In reviewing these speaking motions, a trial court has wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3rd Cir. 1977).

Alternatively, the CBA moves to dismiss under Fed. R. Civ. P. 12(b)(6). Dismissal is warranted under that rule " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied*, 520 U.S. 1251 (1997). The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant has offered "either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). In making such a determination, a court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' " *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)). A court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003).

## DISCUSSION

**I.    *ROOKER-FELDMAN***

The Court will first examine the CBA's argument regarding the *Rooker-Feldman* doctrine because "where it applies, a district court cannot take jurisdiction in the first instance." *Barlow v. Meyers,* 247 F. Supp. 2d 869, 872 (S.D. OH 2002); *see also Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 936-37 (6th Cir. 2002).   American makes the simple argument that the doctrine is inapplicable because it is "not challenging the merits of a state court judgment." (Doc. # 45 at 18).

Pursuant to the Supreme Court's holdings in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) "'a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"  *Barlow*, 247 F. Supp. 2d at 872 (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)); *see also Tropf*, 289 F.3d at 936-37.  The *Rooker-Feldman* doctrine applies where the claim raised in federal court is inextricably intertwined with a claim asserted in a state court proceeding, and where the federal plaintiff's "specific grievance [is] that the law was invalidly–even unconstitutionally–applied in the plaintiff's particular case" in state court.  *Tropf*, 289 F.3d at 937.  In addition, it only applies where, as here, the federal plaintiff was actually a party to the state court ruling which is expressly or implicitly being challenged.  *See De Grandy*, 512 U.S. at 1005; *United States v. Owens*, 54 F.3d 271, 274 (6th Cir. 1995).

The present claim is undoubtedly inextricably intertwined with the Supreme Court of Ohio's cease and desist order.  The order is based upon Gov. Bar R. 7 § 5(a), and American asks this Court to find that the Rule violates its rights under the Fourteenth Amendment.  (Doc. # 1).

9

Thus, if the Court were to determine that the Rule did violate American's rights, the effect would be that the cease and desist order was void.

A problem arises, however, when the Court turns to the second prong of the *Rooker-Feldman* analysis–that is, the parties have stipulated that American's specific grievance is that the Rule is facially unconstitutional, not that the Rule is being invalidly or unconstitutionally applied to American.  (Doc. # 42 at 1; Doc. # 45 at 1, 18-21).  Accordingly, the Court concludes that the *Rooker-Feldman* doctrine does not apply.

## II.    ELEVENTH AMENDMENT

Alternatively, the CBA asserts that dismissal is warranted pursuant to the Eleventh Amendment.  (Doc. # 44 at 4; Doc. # 46 at 1-4).  American counters that because it seeks only declaratory and injunctive relief, the Eleventh Amendment does not apply to the case at bar. (Doc. # 45 at 5-9).  In addition, American argues that the CBA is not a state agency clothed in the Amendment's protections.  *Id.* at 6.  Lastly, American posits that the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law."  *Id.* at 7-8.

The Eleventh Amendment states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

In essence, the Eleventh Amendment "bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, ... by citizens of another state, foreigners or its own citizens."  *Thiokol Corp. v. Department of Treasury, Revenue Div.*, 987 F.2d 376, 381

10

(6th Cir. 1993) (citations omitted);  *see also Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc).  The Eleventh Amendment does not, however, present an absolute bar to suits against states and state officers in federal court.  *Board of Trs. Sabis Int'l Sch. v. Montgomery*, 205 F. Supp. 2d 835, 844 (S.D. Ohio 2002).  In particular, the Eleventh Amendment will not bar a suit against the state or its officers when: (1) application of *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny is appropriate; (2) the state has consented to be sued; or (3) Congress has properly abrogated the states' immunity.  *Id.* (citing *Nelson v. Miller*, 170 F.3d 641, 646 (6th Cir. 1999)).  Absent any exceptions, the Eleventh Amendment immunity bars suits against states, instrumentalities of the state, and arms of the state.  *See Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999); *Foulks v. Ohio Dep't of Rehab. & Corr.*, 713 F.2d 1229, 1232-33 (6th Cir. 1983).  Thus, the Court must preliminary determine whether the CBA qualifies as such an entity.

The entity claiming Eleventh Amendment immunity bears the burden to prove such. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).  In determining whether the CBA is an arm of the state, such that it benefits from Eleventh Amendment immunity, the Court employs a multi-factor test.  *Ernst*, 427 F.3d at 359 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994)(additional citations omitted)); *see also Brotherton v. Cleveland*, 173 F.3d 552, 560 (6th Cir. 1999).  Those factors consist of: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions are akin to traditional state or local functions.  *Ernst*, 427 F.3d at 359.  The first factor is the most important in this balancing test.  *Id.*; *Alkire v. Irving*, 330 F.3d 802, 811

11

(6th Cir. 2003).

The CBA unsuccessfully attempts to bypass its burden by relying on *Berger v. Cuyahoga County Bar Association*, 983 F.2d 718 (6th Cir. 1993). (Doc. # 44 at 4; Doc. # 46 at 1-4). The *Berger* plaintiffs were Ohio attorneys involved in proceedings before the Certified Grievance Committee of the Ohio Bar Association. *Berger*, 983 F.2d at 720. While those proceedings were pending, the plaintiffs filed an action in federal court alleging various constitutional and antitrust violations on the part of the Ohio Supreme Court, the Cuyahoga County Bar Association, its committees and its members. *Id.* at 720-721. Plaintiffs sought declaratory judgment, injunctive relief, money damages, and costs. *Id.* The district court dismissed the suit based upon *Younger* abstention and state action immunity. *Id.* Plaintiffs appealed, and the Sixth Circuit affirmed.

Of particular relevance to the CBA's reliance on *Berger* was the Sixth Circuit's discussion of immunity in that case. Specifically, the Sixth Circuit held that plaintiffs' claims for money damages for the alleged constitutional violations were barred by the doctrines of legislative and prosecutorial immunity. The court reasoned that because judges act in a legislative capacity when promulgating codes of conduct for attorneys, the judges are entitled to legislative immunity. *Id.* at 722. In addition, the court noted that judges who enforce those codes are protected by prosecutorial immunity. *Id.* As a result, the court noted that "because prosecutors are absolutely immune from suit for money damages, judges acting as enforcers are also absolutely immune from suit for money damages." *Id.* (citing *Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 736 (1980) and *Imbler v. Pachtman*, 424 U.S. 409, 421-29 (1976)). More importantly, however, the Court held:

12

> In the present appeal, defendants' role was that of an enforcer. Thus, under *Forrester* and *Consumers Union*, the Supreme Court of Ohio and its justices are immune from suit for money damages. The Cuyahoga County Bar Association, its committees and members are likewise immune from suit because they acted as arms of the Supreme Court of Ohio in performing a function for which the court and its justices are immune.

*Id.* at 722 (citing *Sparks*, 859 F.2d at 433) (holding "It is of no moment that the actor is a designee of the justices of [the Supreme Court of Ohio] rather than the justices themselves"); *see also Watts v. Burkhart*, 978 F.2d 269 (6th Cir. 1992) (en banc) (discussing prosecutorial and judicial immunity).

The CBA relies on the Court's statement in *Berger* that the Cuyahoga Bar Association is an arm of the state in support of its argument that it, too, is an arm of the state entitled to Eleventh Amendment immunity. (Doc. # 44 at 4). However, as American correctly points out, important differences exist between the facts in *Berger* and in the case *sub judice*. First, the quoted language was from a portion of the holding in which the Sixth Circuit was addressing the availability of judicial, legislative, and prosecutorial immunity in the context of claims for money damages. (Doc. # 45 at 6-9). Here, the CBA is relying on immunity under the Eleventh Amendment which requires the Court to engage in a completely different analysis to determine its applicability.[4] Secondly, American does not request money damages; instead, it moves for only injunctive relief.

Accordingly, because the CBA failed to engage in the *Ernst* analysis and because *Berger's* analysis of legislative and prosecutorial immunity is inapposite to the case at bar, the Court holds that the CBA is not an arm of the state entitled to immunity pursuant to the Eleventh

---

[4] That analysis is outlined *infra*.

Amendment.[5]  The CBA's motion to dismiss based upon the Eleventh Amendment is **DENIED**.

## II.    *YOUNGER* **ABSTENTION**

More successful is the CBA's argument that the Court should abstain from exercising jurisdiction under the doctrine pronounced in *Younger v. Harris*, 401 U.S. 37 (1971).  (Doc. # 44 at 4-7; Doc. # 46 at 7-10).  The Court finds American's contentions to the contrary to be without merit.  (Doc. # 45 at 12-18).

Abstention is designed to promote "federal-state comity, [and] is required when to render a decision would disrupt the establishment of coherent state policy."  *Akenbrandt v. Richards*, 504 U.S. 689, 704-05 (1992).   The exercise of abstention is the exception, not the rule. Abstention should rarely be invoked because federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).   However, "[w]here vital state interests are involved, a federal court should abstain unless state law clearly bars the interposition of the constitutional claims."  *Middlesex County v. Garden State Bar Assoc.*, 457 U.S. 423, 432 (1982).

In *Younger*, the United States Supreme Court held that absent unusual circumstances, federal courts could not interfere with a pending state criminal proceeding.  *Younger*, 401 U.S. at 37.  The Court later expanded that holding to include "noncriminal judicial proceedings when important state interests are involved."  *Middlesex*., 457 U.S. at 432 (citations omitted).

Generally, abstention is appropriate under *Younger* if: 1) the state bar disciplinary

---

[5] The CBA failed to raise legislative, judicial, or prosecutorial immunity so the Court will not address those issues.  (Doc. # # 44, 46).

14

hearings are within the constitutionally prescribed jurisdiction of the State Supreme Court and constitute ongoing state judicial proceedings; 2) the state proceedings implicate important state interests; and 3) the state proceedings afford an adequate opportunity to raise constitutional questions. *Id.*

      **A.**     **Ongoing state judicial proceedings**

The Court will first address whether the state bar disciplinary hearings are within the constitutionally prescribed jurisdiction of the State Supreme Court before examining the issue of whether the hearings constitute ongoing state judicial proceedings.

To begin, Ohio's constitution imparts original jurisdiction in its supreme court over "admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law." Ohio Const. art. IV, § 2(B)(1)(g).  The Cease and Desist Order arises from the CBA's claim that American is engaging in the unauthorized practice of law. (Doc. # 44 Ex. 10).  Accordingly, the proceedings at issue are within the "constitutionally prescribed jurisdiction" of the Supreme Court of Ohio.  *See Berger*, 983 F.2d at 723.

Next, the Court must determine whether the proceedings can be characterized as judicial and ongoing.  The *Berger* court noted that disciplinary proceedings are judicial in nature because they "are carried out by committees which are arms of the Ohio Supreme Court ...[with] [t]he supreme court ultimately decid[ing] what discipline should be given."  *Id.*  That is the same situation with the UPL Board; committees and boards conduct the proceedings and the Ohio Supreme Court ultimately decides whether the unauthorized practice of law has occurred.  Gov. Bar R. VII § § 2-5, 18-19.  Furthermore, the proceeding is ongoing, as the Ohio Supreme Court ordered the UPL Board to conduct a hearing and that hearing will be held on August 17, 2006.

The Court therefore concludes that the first *Younger* prong is satisfied.

### B.     Important state interest

The second *Younger* requirement is easily established here.  Numerous courts have held, and American agrees, that the regulation of the practice of law is an important state interest. *Berger*, 983 F.2d at 723; *see also Bailey, et al., v. Moyer, et al*., No. 05-556, at 5-6 (S.D. Ohio June 23, 2005);  *Brown v. Ohio Disciplinary Counsel*, No 99-4514, 2000 U.S. App. LEXIS 23662, at *3 (6th Cir. 2000); (Doc. # 45 at 16 n.9).

### C.     Adequate opportunity to raise constitutional questions

Lastly, the Court must determine whether the ongoing state judicial proceeding that is the focus of this motion affords American an adequate opportunity to raise constitutional questions. The Court follows several other courts in concluding that the proceeding at issue does offer American just such an opportunity.

To begin, the *Middlesex* court stated "so long as the constitutional claims of respondents can be determined in the state proceedings and so long as there is no showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate, the federal courts should abstain."  *Middlesex*, 457 U.S. at 435.  Rule 7 § 5(a) provides American with numerous opportunities to raise its constitutional objections.[6]

The Rule empowers an unauthorized practice of law committee of any bar association or the Supreme Court's Office of Disciplinary Counsel ("Disciplinary Counsel") to investigate allegations relative to the unauthorized practice of law.  Gov. Bar R. 7 § 4.  Once the bar

---

[6] Because the matter has been scheduled for a hearing, and given the possibility of a complaint being filed, the Court cannot examine Gov. Bar R. 7 § 5(a) in isolation, but must rather consider the opportunities available to American under all of the Rule's sections.

association committee or Disciplinary Counsel has "substantial, credible evidence demonstrating that ... an entity has engaged in the unauthorized practice of law and poses a substantial threat of serious harm to the public," they must file a motion for a cease and desist order with the Supreme Court.  *Id.* at § § 5a(A)(1) & 5a(A)(1)(b).   Prior to filing that motion, however, reasonable attempts to provide the respondent, or the party charged with engaging in the unauthorized practice of law, with notice of the motion must be made.  *Id.* at § 5a(A)(1)(a).  The respondent may file a memorandum in opposition to the motion.  *Id.* at § 5a(A)(2).   That memorandum may raise any and all objections to the motion, including constitutional arguments, but it must include supporting evidence.  *Id.*  The Supreme Court then considers the motion and any memoranda in opposition and may enter an order that:

> the respondent cease and desist engaging in the unauthorized practice of law, pending final disposition of proceedings before the Board ... or may order other action as the Court considers appropriate.  If requested by realtor [bar association or disciplinary counsel], the Supreme Court may enter an order that the respondent immediately cease and desist engaging in the unauthorized practice of law prior to receipt of a memorandum opposing the realtor's motion, pursuant to Rule XIV of the Rules of Practice of the Supreme Court of Ohio.

*Id.* at § 5a(B).

In this case, American filed a memorandum in opposition in accordance with the Rules of Practice of the Supreme Court of Ohio.  (Doc. # 44 Ex. 10); Gov. Bar R. 7 § 5(a)(D).  However, the court issued a cease and desist order and remanded the matter to the UPL Board for a hearing. *Id.*  Thus, Gov. Bar R. 7 § 5a(C)(1) became relevant.  That section of the rule empowered American to file a motion to dissolve or modify the cease and desist order.  Nothing prohibited American, as the respondent, from raising constitutional issues within that motion to dissolve or modify.

17

In addition, the rule allowed American Family to file a motion to dissolve the cease and desist order after 180 days had passed without the realtor filing a formal complaint with the Board.  *Id.* at § 5a(C)(2).  Again, nothing prevented American from raising constitutional issues in such a motion.

Once a formal complaint is filed by either the local bar association or Disciplinary Counsel with the Supreme Court of Ohio, the UPL Board must compose a hearing panel that will conduct a hearing on the complaint.  *Id.* at § 7(A)(1).  The hearing panel must follow the Rules of Civil of Procedure and Rules of Evidence.  *Id.* at § 14.  American is free to raise constitutional arguments before the hearing panel.  After the hearing, if the panel unanimously determines that the respondent has not engaged in the unauthorized practice of law, or if the parties so agree, the panel may order that the complaint be dismissed.  *Id.* at § 7(C).  If the panel cannot unanimously agree, the panel must prepare its findings of fact as well as its recommendations for dismissal and present those to the UPL Board.  *Id.* at § 7(D).

On the other hand, if a majority of the panel finds that the respondent engaged in the unauthorized practice of law by a preponderance of the evidence, the hearing panel is required to file its hearing report, findings of facts, and recommendations with the UPL Board.  *Id.* at § 7(E). The Board, in turn, reviews the entire record and may either remand the matter for another hearing before the panel, determine that the complaint should be dismissed, or find that the respondent has engaged in the unauthorized practice of law.  *Id.* at § 7(F).  If the Board determines that the respondent has engaged in the unauthorized practice of law by a preponderance of the evidence, it must file its final report with the Supreme Court of Ohio detailing the Board's findings and recommendations.  *Id.* at § 7(G).

18

Once the matter is before the Supreme Court of Ohio, that court "shall issue to respondent an order to show cause why the report of the Board shall not be confirmed and an appropriate order granted." *Id.* at § 19(A). Respondent then has twenty (20) days to file its objections (and concurrent brief in support) "to the findings or recommendations of the Board and to the entry of an order or to the confirmation of the report on which the order to show cause was issued." *Id.* at § 19(B). Nothing in the Rule prohibits American, as the respondent, from raising constitutional issues at this juncture. The relator may file a reply brief, but must do so within fifteen (15) days after the respondent files its brief in support of the objections. *Id.* at § 19(C).

If objections are filed, the Supreme Court of Ohio conducts a hearing, affording American, as the respondent, yet another opportunity to raise constitutional questions. *Id.* at § 19(D). After the hearing is conducted, the Supreme Court "shall enter an order as it finds proper." *Id.* at § 19(D)(1).

The preceeding description of the process set forth in Gov. Bar R. 7 § 5(a) clearly establishes that American has numerous adequate opportunities to have its constitutional issues addressed and determined in the ongoing state judicial proceeding. *Middlesex*, 457 U.S. at 435; *see also Bailey*, No. 05-556 at 6 (holding same); *see also Brown*, 2000 U.S. App. LEXIS 23662 (relying on *Berger* to hold pre-amendment verison of Rule 7 § 5a provides adequate opportunity to raise constitutional challenges). Because the Court holds that the three prongs of *Younger* are satisfied, the last issue the Court must address is whether any exceptions apply that would prohibit the court from abstaining in this matter.

**D.    Exceptions**

19

The Court will not abstain if one of the three exceptions to the *Younger* abstention doctrine applies: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975); (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions[,]" *Moore v. Sims*, 442 U.S. 415, 424 (1979) (quotation omitted); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief." *Kugler v. Helfant*, 421 U.S. 117, 125 (1975). These exceptions are interpreted narrowly. *Zalman v. Armstrong*, 802 F.2d 199, 205 (6th Cir. 1986). American only asserts that the second ground prohibits the Court from abstaining. (Doc. # 45 at 17-18).

In order for the Court to exercise jurisdiction despite the satisfaction of the *Younger* elements, American must prove that Gov. Bar R. 7 § 5(a) is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Harper v. Office of Disciplinary Counsel, Supreme Court of Ohio*, No. 96-3186, 1997 U.S. App. LEXIS 10610, at * 6 (6th Cir. 1997) (citing *Younger*, 401 U.S. at 53-54 (citation and quotations omitted)), (cited with approval in *Middlesex*, 457 U.S. at 437).   However, the United States Supreme Court did not actually apply this exception in either *Younger* or *Middlesex*.  *Id.* (citing Middlesex, 457 U.S. at 435); *see also Younger*, 401 U.S. at 53.

The Court will likewise decline to apply the "patently unconstitutional" exception here. As outlined above, the rule at issue sets forth a detailed procedure that provides adequate notice and various opportunities to present constitutional arguments in writing as well as orally. Furthermore, the rule establishes deadlines.  With those facts in mind, the Court concludes that

20

the Rule is not "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Harper*, 1997 U.S. App. LEXIS 10610, at * 6.  Accordingly, the Court will not apply the exception and will abstain from exercising jurisdiction in this matter.

## CONCLUSION

The CBA's motion to dismiss is **GRANTED**.  (Doc. # 44).  The Clerk shall remove this case from the Court's docket.

**IT IS SO ORDERED.**

                                **/s/   Gregory L. Frost**

                                **GREGORY L. FROST**
                                **UNITED STATES DISTRICT JUDGE**